EARLE F. TUCKER AND MARTHA TUCKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EARLE F. TUCKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45764, 45765. Filed October 27, 1954.

*Joseph A. Maun, Esq.*, for the petitioners.
*Thomas A. Steele, Jr., Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* The issue before us revolves around the following circumstances. Universal Motor Company, during the periods in question, was a Ford dealer. Earle F. Tucker was the general manager. In 1945, just prior to the 1st of May, when the transactions in question were consummated, the stockholdings were as follows:

|  | Shares |
|---|---|
| Blanche E. Fleck | 151 |
| John R. Fleck | 57 |
| Gordon V. Cox | 80 |
| Earle F. Tucker | 112 |

In accordance with the policy of the Ford Motor Company, its representative insisted that at least 51 per cent of the stock of Universal Motor Company be owned by the individual who was responsible for its active management. Failure to comply would have resulted in cancellation by Ford Motor Company of the dealer agreement, and the selection of a new Ford dealer, who might have been Tucker. In all events, if Universal Motor Company was to continue as a Ford agency, a recasting of its structure was necessary. Since Tucker was to continue to manage the business, it was logical that he should become the owner of 51 per cent of the stock. Fleck was active in another business, to which he gave substantially all of his time and attention. Cox was an attorney with an active practice who would not have had the time to devote to Universal Motor Company. There is nothing to indicate that he had any experience which would qualify him to manage the company. Likewise, there is nothing to indicate that Blanche E. Fleck had such experience or qualifications.

Fleck and Tucker had been closely associated for some time. Fleck wanted to retain a substantial interest in the business, either directly, or through his wife, or both. If Fleck were to retain a substantial interest, and Tucker were to own 51 per cent of the stock, any solution of the problem necessitated the acquisition of the Cox stock interest by Tucker. Cox was by no means anxious to sell. In the negotiations which ensued, the interests of Tucker and Fleck were interrelated, and they cooperated with each other in dealing with Cox. The latter evidently realized he was in a key bargaining position.

The negotiations ultimately resulted in Tucker's acquisition of 12 shares of stock from Blanche E. Fleck, and all of the stockholdings of Cox. The latter transaction was accomplished in several steps, which were interrelated and an integral part of the whole.

Tucker personally paid Cox $225 per share for all of the stock owned by the latter. At the same time, the Universal Motor Company entered into an agreement with Cox in which it obligated itself to pay him 20 per cent of its profits for 5 years, together with other amounts

not here in issue. The contract between Universal Motor Company and Cox, in referring to the consideration, used the following language:

In consideration of said Gordon V. Cox selling to Earle F. Tucker eighty (80) shares of stock in said Universal Motor Company, and, whereas, such sale is necessary in order for the Universal Motor Company to continue to operate as a Ford Agency in the City of Bismarck, it is hereby agreed * * *.

The contract further provides, in part, as follows:

In addition to the $2,000.00 referred to in the paragraph above, Universal Motor Company agrees to pay for the consideration above mentioned the sum of twenty per cent (20%) of the net earnings of the Universal Motor Company for the fiscal years ending May 1, 1946, May 1, 1947, May 1, 1948, May 1, 1949, and May 1, 1950, to Gordon V. Cox, his heirs or assigns, such payments to be made on the first day of June following the close of the fiscal year on May first of the year or years involved.

Respondent determined that the payments to Cox in the years in question in the amount of 20 per cent of the profits of Universal Motor Company constituted constructive dividends to Tucker and were taxable to him as such. Tucker urges that respondent's determination was in error on the theory that the payments were made by the corporation for a valuable consideration in accordance with the requirements of a separate contract with Cox, and, therefore, that such payments cannot be deemed dividends to Tucker for tax purposes.

It is our view that the several steps taken to effect the transfer of the Cox stockholdings to Tucker were part of a single transaction. Part of the consideration was paid by Tucker direct to Cox at the rate of $225 per share. It is clear from the record that Cox would not and did not sell his stock at that figure. Whether or not Tucker had sufficient personal resources to have paid personally the additional consideration demanded by Cox, the purchase was implemented, with the full accord of Tucker and the Flecks, through payments to Cox by Universal Motor Company of 20 per cent of its profits. Without such payments (or some equivalent satisfactory to Cox) Tucker could not have acquired the stock owned by Cox. With such payments, Tucker did acquire the stock. The payments were made consciously and deliberately to achieve this end, with the full knowledge and consent of all of the stockholders of Universal Motor Company, pursuant to a contract entered into at a time when it was clearly understood (and affirmatively intended) that Tucker would forthwith become the majority stockholder. The payments were made for his benefit, with his cooperation, and at his direction (together with that of the other stockholders).

We think it clear from the foregoing that Tucker in purchasing the stock from Cox indirectly paid the additional consideration to Cox through the medium of the use of corporate funds, which were paid

out with the knowledge and consent of the holders of all of its stock. The tangible result was the acquisition of the stock by Tucker for the combined considerations of the money paid out directly by him and the money paid through the medium of the corporation.

We add, for completeness, that Cox rendered no services and performed no duties for the benefit of the corporation as a consideration for the above payments. The record is not clear as to whether he rendered any services for the annual payments of $2,000, but the respondent has not taxed these payments to Tucker, and they give rise to no issue in this case.

The law is well established that the disbursement of corporate earnings serving the ends of a stockholder may constitute a dividend to such stockholder notwithstanding that the formalities of a dividend declaration are not observed; that the distribution is not recorded on the corporate books as such; that it is not in proportion to stockholdings; or even that some of the stockholders do not participate in its benefits. *Paramount-Richards Theatres* v. *Commissioner,* (C. A. 5, 1946) 153 F. 2d 602, 604. See also 1 Mertens, Law of Federal Income Taxation, sec. 9.108 (1942), and 1954 Cumulative Pocket Supplement, secs. 9.11 and 9.12.

It is urged on Tucker's behalf that the payments of 20 per cent of profits made by the corporation to Cox were supported by a valuable consideration accruing to the corporation itself as distinct from Tucker or any other stockholder. His position is that the very life of the corporation was in the balance, because Ford Motor Company would have canceled the dealer franchise if Tucker had not been able to acquire 51 per cent of its stock. It is clear that the transaction produced an intangible benefit to the corporation. By the same token, a like intangible benefit passed to Tucker, both as stockholder and as an officer holding a lucrative position. We point out, however, that we are not here dealing with niceties relating to the general principles of law upon which, in a different setting, we might be called upon to determine, as the decisive issue in a case, whether or not a particular contract was supported by a valuable consideration. We are now dealing with the practical application of the tax laws to the particular transaction before us which involves several steps with more than one element comprising the consideration.

Keeping before us the practical aspects of the application of the tax laws, the core of the problem is that Tucker acquired stock from Cox; that his acquisition of such stock was a material factor not only in acquiring control of the corporation, but also in insuring his position and compensation as general manager; that he paid part of the price directly and out of his own funds; that the balance was paid by unanimous consent of all interested parties out of the funds of the

corporation, the control of which was acquired by him at the time the arrangement to purchase the Cox stock was consummated; and that the payments made by the corporation to Cox were for Tucker's benefit although they also brought intangible benefits to the corporation and others in varying degrees.

We hold that, under the foregoing circumstances, Tucker was the constructive recipient of dividends arising out of the payments to Cox by the corporation of 20 per cent of its profits for the years in question, such payments being part of the consideration for the sale and transfer to Tucker by Cox of all of the latter's stock in said corporation.

*Decisions will be entered under Rule 50.*